# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DAVID A. HOFFMAN,  )
                                            )
             Plaintiff,  )
                                              )
           v.  )  C.A. No. 2023-0097-MTZ
                                              )
FIRST WAVE BIOPHARMA, INC.,  )
a Delaware corporation,  )
                                              )
            Defendant.  )

## MEMORANDUM OPINION

Date Submitted: June 23, 2023
Date Decided: September 27, 2023

David A. Jenkins, Jason Z. Miller, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; Robert P. Haney, Jr., Garrick D. Josephs, FOLEY HOAG LLP, New York, New York; Peter G. Ellis, Sahar M. Basaria, FOLEY HOAG LLP, Boston, Massachusetts, *Attorneys for Plaintiff David A. Hoffman.*

Kevin M. Gallagher, Nicole M. Henry, Spencer V. Crawford, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware, *Attorneys for Defendant First Wave BioPharma, Inc.*

**ZURN, Vice Chancellor.**

Plaintiff David Hoffman is a director of defendant First Wave Biopharma, Inc. ("First Wave" or the "Company"). Hoffman seeks advancement in connection with a purported investigation or inquiry into his conduct as a director based on the Company's contractual promise to advance fees incurred in connection with investigations and inquiries.

Hoffman is relatively new to First Wave's board of directors, and was appointed in connection with First Wave's acquisition of a target. That acquisition resulted in litigation with the target's stockholder representative followed by settlement negotiations. First Wave's plans to raise capital were leaked to the target's founder, who used that information to demand a higher settlement payment. First Wave's chairman and CEO suspected Hoffman was the mole, and took steps to create a board committee excluding Hoffman to discuss matters he and the other directors wanted to keep confidential from the target's stockholder representative. Hoffman responded by engaging counsel, and his counsel and First Wave exchanged letters. At times, First Wave suggested that the other directors believed Hoffman had breached his fiduciary duties. Hoffman's counsel asserted that the committee's creation amounted to his wrongful exclusion from board discussions. Notwithstanding the letters, the board approved the committee's formation.

Hoffman now seeks advancement for his representation in his conflict with the Company. Hoffman argues that because the other directors concluded that he

1

breached his fiduciary duties, First Wave must have investigated his conduct. First Wave contends the board acted on a belief that did not result from any investigation. With the benefit of discovery, the parties proceeded to trial.

The evidence at trial did not prove that the Company undertook any investigation or inquiry. Rather, it proved that First Wave's chairman and CEO presumed that Hoffman disclosed the capital raise, based in part on Hoffman's relationship with the target's founder, and proposed forming the committee based on that presumption. This opinion concludes Hoffman's advancement rights are not triggered because he did not incur expenses in connection with a covered proceeding.

In pretrial briefing, Hoffman developed a secondary position that, in claiming he breached his fiduciary duties and violated other laws, the Company had threatened a lawsuit or regulatory proceeding. Because the advancement provision entitles him to recover in connection with threatened proceedings, he argued the Company is obliged to advance his expenses. But Hoffman failed to adequately plead a claim based on this theory, failed to give the Company adequate notice of his intent to litigate it, and failed to seek leave to amend his pleading to include it. These failures defeat his claim for advancement under that theory.

## I.     BACKGROUND

In this post-trial opinion, I have found the following facts by a preponderance of the evidence based on the witnesses' videotaped depositions, contemporaneous documents, and other filings in the record.[1]

### A.     The Company's Acquisition Of Old First Wave Devolves Into Litigation.

Nonparty Dr. Gary Glick founded nonparty First Wave Bio, Inc. ("Old First Wave"),[2] "a clinical-stage biotechnology company specializing in the development of novel, gut-targeted, small molecule therapies for auto-immune inflammatory bowel diseases (IBD) and other serious conditions."[3]  Glick approached his long-time friend Hoffman with an opportunity to invest in Old First Wave, which Hoffman accepted.[4]

In 2021, AzurRx BioPharma, Inc. ("AzurRx") acquired Old First Wave for approximately $18 million in cash, $4 million in stock, and up to $207 million in

---

[1] *Level 4 Yoga, LLC v. CorePower Yoga, LLC*, 2022 WL 601862, at *2 (Del. Ch. Mar. 1, 2022).  That record is sparse: it comprises forty-seven exhibits and the deposition transcripts of Hoffman and First Wave's chairman and CEO, James Sapirstein.  Citations in the form "[Last Name] —" refer to the deposition testimony of the referenced deponent, available at docket item ("D.I.") 28.  Citations in the form "JX —" refer to the parties' joint trial exhibits.

[2] Hoffman 20.

[3] JX 1.0083.

[4] Hoffman 19–20.

milestone payments.[5]  Additionally, the holders of a majority of Old First Wave's outstanding stock at the time of closing had the right to elect a director to the post-closing entity's board.[6]  Practically, Glick had the power to appoint that director, and in April 2022, he caused Hoffman to be appointed.[7]  After closing, AzurRx changed its name to First Wave Biopharma Inc.[8]

The transaction did not age well.  Within two months of closing, Old First Wave's stockholder representative Fortis Advisors LLC ("Fortis") sued First Wave, alleging it failed to pay part of the up-front consideration and failed to provide notice that a milestone was met.[9]  The parties settled that lawsuit on November 15.[10]  On May 19, 2022, Fortis sued again, alleging First Wave missed a required payment under the settlement agreement.[11]  The parties entered into settlement discussions and were close to signing a term sheet that contemplated the Company paying Fortis $1.5 million.[12]

---

[5] JX 1.0002.

[6] JX 1, Ex. 2.1 § 6.9.

[7] Hoffman 25–26, 28; D.I. 30 § III ¶¶ 2, 7.

[8] D.I. 30 § III.a ¶ 4; First Wave BioPharma, Inc., Form 8-K (Current Report) (Sept. 21, 2021), Ex. 3.1.

[9] *Fortis Advisors LLC v. First Wave BioPharma, Inc.*, C.A. No. 2021-0936-JRS, at D.I. 1 (Oct. 29, 2021).

[10] First Wave BioPharma, Inc., Form 8-K (Current Report) (Nov. 16, 2021).

[11] JX 6.

[12] *See* Sapirstein 37–38.

Meanwhile, the Company sought to raise additional capital.[13] At a June meeting of First Wave's board of directors (the "Board"), First Wave's directors discussed potential financing options, including raising between $1 million and $3 million through an equity offering.[14] A final decision was not reached at that time. On July 28 or 29, the Company's chairman and CEO James Sapirstein informed the other directors on a Board call that the Company would be raising $4 million through an at-the-market, or "ATM," offering.[15] The Board did not intend to publicly disclose the offering until September or October.[16]

But Glick found out about First Wave's planned influx of cash almost immediately. On a July 29 call, Glick informed First Wave representatives that he was aware the Company was poised to raise $4 million through an ATM offering, and demanded that the settlement payment to Fortis be increased by $1 million, to a total of $2.5 million.[17] First Wave gave in, and the parties revised and signed the

---

[13] *See* JX 7.0003.

[14] *Id.*

[15] Sapirstein 180.

[16] *Id.* at 38–39.

[17] *Id.* at 37–38, 180.

5

settlement term sheet to reflect these terms that same day.[18]  Fortis dismissed the lawsuit in September, and the parties worked towards a final settlement agreement.[19]

Glick's knowledge of the ATM offering "shocked" the Company representatives on the call, which included Sapirstein, the Company's CFO Sarah Romano, and the Company's head of business development Martin Krusin.[20]  The three discussed the matter after getting off the call, though they did not reach a conclusion as to who could have leaked the information.[21]

### B.  Sapirstein Concludes Hoffman Leaked First Wave's Plan For Cash, And The Board Creates A Committee Excluding Hoffman.

Sapirstein believed Hoffman had told Glick about the ATM offering.[22]  He had no concrete evidence, but he had two reasons.  First, the plan for the ATM offering was not public:  only the Board and certain members of management knew about it.[23]  Hoffman was the only person in the know whom Sapirstein did not trust.[24]

---

[18] JX 8.

[19] *Fortis Advisors LLC v. First Wave BioPharma, Inc.*, C.A. No. 2022-0436-MTZ, at D.I. 27 (Del. Ch. Sept. 13, 2022).

[20] Sapirstein 37, 39–40.

[21] *Id.* at 41–43.

[22] *Id.* at 42–45.

[23] *See id.*

[24] *See id.* at 44–45.

Second, Hoffman was the only director who had a positive relationship with Glick—the others strongly disliked him.[25]

After his conversation with Romano and Krusin, Sapirstein discussed the disclosure with the Company's outside counsel, who told Sapirstein to "just let it rest."[26] The Company's counsel "was not asked at that time to do any work to help [Sapirstein] determine who . . . disclosed information to Dr. Glick."[27] On an informal Board call, Sapirstein brought the issue up with Hoffman, who denied informing Glick of the ATM offering.[28] Otherwise, Sapirstein did not take any steps to confirm his belief that Hoffman had leaked the planned offering to Glick or take other action at the time.[29] His reasons for not doing so were that he wanted to avoid legal costs, and that he believed that definitively identifying who disclosed the information would not remedy the situation.[30]

Others shared Sapirstein's concerns. Board members individually called Sapirstein expressing concerns about discussing Fortis matters in front of Hoffman and "ask[ed] [Sapirstein] to come up with an official process."[31] Sapirstein

---

[25] *Id.*; *see also id.* at 56.

[26] *Id.* at 43.

[27] *Id.* at 43–45.

[28] *Id.* at 47–48, 92–93.

[29] *Id.* at 43–45, 52.

[30] *Id.* at 45–46, 53, 152–53, 194.

[31] *Id.* at 64–65.

discussed these requests on "one or two" occasions with Edward Borkowski, another Company director.[32] Sapirstein believed Borkowski would be a good resource because he had "done something like [that] before."[33] Together, he and Borkowski came up with the idea to form a committee consisting of all directors other than Hoffman to discuss certain financial matters that may be of significance to Fortis.[34] He discussed the plan with only one other director, Chuck Casamento.[35] In October, Sapirstein, in his capacity as chairman, decided he would propose the creation of a committee comprising all directors other than Hoffman.[36]

On October 13, Sapirstein circulated Board meeting materials via email to all directors other than Hoffman.[37] In the email, Sapirstein explained that Hoffman would receive an abridged version of the Board slide deck, and that during the meeting, the Board would call for a "special session . . . where [Hoffman] will need to sign off."[38] Sapirstein sent the Board materials to Hoffman later that day.[39]

---

[32] *Id.* at 33, 87, 104.

[33] *Id.* at 33.

[34] *Id.* at 107–08.

[35] *Id.* at 87, 89.

[36] *Id.* at 105, 115–16.

[37] JX 13.

[38] JX 13.0001.

[39] JX 14.

## C.       Hoffman Responds Through Counsel.

Hoffman did not take the news well.  He replied four days later and quoted an email from his counsel, which opined that the Board had no legal basis to exclude him from "board discussions."[40]  Hoffman also requested an explanation from Company counsel as to why he was being excluded.[41]  He began playing offense, requesting that the Board discuss "unusual price action and high volume of [the Company's] stock price" because "[t]here [were] several issues that pertain to the board in regards to the trading of [the Company's] stock that [he] believe[d] need[ed] to be reviewed."[42]  Sapirstein and some other directors understood this to be an accusation that certain directors or members of management were manipulating the Company's stock price.[43]

Sapirstein responded that day by email:

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *See* Sapirstein 24–26, 93, 135–37.

The other directors of the Company believe that you have previously disclosed sensitive information regarding the Company to one or more stockholders of the Company in violation of applicable federal securities laws, the Company's insider trading policy and your fiduciary duties as a director under Delaware law. Your unauthorized and unlawful disclosures have resulted in significant damage to the Company. The Board believes that it needs to take appropriate action to protect sensitive information regarding the Company and to prevent the potential for future breaches by you of your legal responsibilities. Accordingly, at the next meeting, the Board intends to establish a committee to consider and act on sensitive matters, the unauthorized disclosure of which could potentially damage the Company.[44]

On October 18, Sapirstein circulated a draft Board resolution authorizing the creation of a Strategy and Transactions Committee (the "Committee").[45] The resolution provided that the Committee would consist of every director other than Hoffman.[46] Sapirstein wrote that "[t]he matters delegated to the committee should be limited to those necessary to protect Company [sic] against the effects of any director sharing the information with Fortis."[47] Hoffman perceived the Committee as a means to exclude him from the Board.[48]

The next day, Hoffman's counsel sent a letter to the Company calling the suggestion that he breached his fiduciary duties and shared confidential information

---

[44] JX 15.0001. Counsel did not explain, and the record did not clearly demonstrate, the Company's basis for suggesting Hoffman violated federal securities laws or the Company's insider trading policy.

[45] JX 16.

[46] JX 16.0002.

[47] JX 16.0001.

[48] *See* JX 14; JX 17.0001; JX 30.

with Fortis "wholly unsubstantiated."[49]  The letter contended that "even the board notice of the meeting where he was being excluded did not allege improper conduct" and that Hoffman "was never even made aware of the allegation, never asked for any information and never given an opportunity to respond."[50]

The Company's counsel responded by letter on October 20 (the "October 20 Letter").[51]  That letter conveyed that "[t]he Board believes that Mr. Hoffman, in breach of applicable federal securities laws, the Company's Insider Trading Policy, and his duty of loyalty as a director of the Company under Delaware law, unlawfully disclosed the [ATM offering] to Gary Glick and Fortis."[52]  The letter explained that "this belief is based on" Glick's "substantially simultaneous demand for" additional settlement consideration at the time the Board was informed that the Company would be raising funds through an ATM offering.[53]  The letter concluded:

---

[49] JX 17.0001.

[50] *Id.*

[51] JX 18.0001.

[52] *Id.*

[53] *Id.*

As I am sure you are aware, a director is not entitled to exculpation for a breach of the duty of loyalty under Delaware law and the Company's Amended and Restated Certificate of Incorporation. Accordingly, Mr. Hoffman should consider his situation carefully and, frankly, should immediate [sic] resign as a director of the Company given his actions.[54]

The Board met that same day.[55] When the Board turned to the Committee's creation, Hoffman left the meeting.[56]

The Board meeting minutes reflect that after Hoffman left, "Sapirstein expressed his view that Mr. Hoffman had previously disclosed sensitive confidential information to Fortis and expressed his concern that future disclosures would be made that could be detrimental to the Company."[57] Borkowski "stated that he believes that Mr. Hoffman disclosed sensitive information to Fortis to the detriment of the Company and that his view is that Mr. Hoffman has breached his fiduciary duties and should not be involved in certain Board discussions."[58] "The other members of the Board expressed their general agreement with these views . . . ."[59]

---

[54] JX 18.0002.

[55] JX 20.

[56] JX 20.0003. Hoffman testified that he was asked to be interviewed at the October 20 Board meeting. Hoffman 85. He then clarified that Sapirstein and Company counsel merely asked him to give his "side of the issue" at the meeting. *Id.* at 85–86.

[57] JX 20.0004.

[58] *Id.*

[59] JX 20.0005.

12

The Board then approved the Committee's creation, and the Committee met.[60] That was the only official Committee meeting.[61]

In an October 25 letter, Hoffman's counsel attacked the Board's deliberative process as not amounting to a proper investigation. Hoffman's counsel criticized the Board for "fail[ing] to follow lawful procedures in investigating Mr. Hoffman and making a decision to exclude him from Board deliberations" and failing to "launch any such inquiry in accordance with the First Wave by-laws and Delaware law."[62] Hoffman's counsel noted the Board did not inform Hoffman that it was conducting an inquiry, and contended launching an investigation without a full Board meeting requires unanimous Board consent, and that Hoffman did not consent.[63] Hoffman's counsel also pointed out that Hoffman had never been interviewed or questioned in connection with his alleged information sharing, which his counsel described as "the most basic step in any investigation."[64]

The Company and Fortis entered into a final settlement agreement on November 30.[65]

---

[60] JX 20.0004–0006; JX 19; Sapirstein 94, 212.

[61] Sapirstein 93–94, 167–68.

[62] JX 22.0001.

[63] JX 22.0001–0002.

[64] JX 22.0002.

[65] JX 27.

## D. Hoffman Pursues Advancement, Books And Records, And This Action.

Hoffman's counsel sent a second letter on October 25 demanding indemnification and advancement for fees and expenses "incurred in relation to First Wave's inquiry into Mr. Hoffman's alleged 'violation of applicable federal securities laws, [First Wave's] insider trading policy and [his] fiduciary duties as a director under Delaware law' and the its [sic] decision to exclude Mr. Hoffman from certain" Board meetings.[66]

In December, Hoffman's counsel served a demand to inspect the Company's books and records pursuant to 8 *Del. C.* § 220.[67] Among other things, the demand sought inspection of books and records relating to the Committee's formation, Committee meetings, and "the determination made by the Board at [the October 20] meeting, purportedly after an inquiry done by the Board, that Mr. Hoffman had improperly disclosed confidential Board information."[68] The demand's stated purposes were "to evaluate the propriety of the creation of the [Committee] referenced in the October 20, 2022 Board Minutes and the determination made by said Committee as to the actions of Mr. Hoffman" and to enable Hoffman to stay informed about the Company such that he could "provide input into important Board

---

[66] JX 23.0001 (first and second alterations in original) (quoting JX 15.0001).

[67] JX 29.

[68] *Id.*

14

level issues that have been delegated to the Committee improperly."[69] Hoffman's counsel sent another letter the same day, attacking the Committee's formation and continued existence and repeating Hoffman's request for indemnification and advancement.[70]

Company counsel responded by letter defending the Committee's creation.[71] It also declined to provide Hoffman with indemnification or advancement, asserting that the Company had neither threatened nor pursued any legal action and had not conducted "any formal investigation, inquiry, hearing, or the like" into Hoffman's actions.[72]

The Company produced books and records in response to Hoffman's demand on January 11, 2023.[73] Hoffman did not pursue his demand any further.

On January 27, 2023, Hoffman filed his complaint in this action seeking advancement and fees on fees from the Company (the "Complaint").[74] The

---

[69] JX 29.0002.

[70] JX 30.

[71] JX 33.0001.

[72] JX 33.0002.

[73] D.I. 30 § III ¶ 23.

[74] D.I. 1 [hereinafter "Compl."].

Company answered the Complaint,[75] and engaged in discovery before proceeding to a half-day trial on a paper record.[76]

## II.    ANALYSIS

Hoffman seeks advancement under an indemnification agreement with the Company that grants Hoffman a mandatory advancement right (the "Indemnification Agreement").[77] That right is triggered where Hoffman incurs expenses "by reason of his Corporate Status in connection with any Proceeding."[78] There is no dispute that Hoffman incurred the expenses at issue by reason of his Corporate Status. Rather, the parties dispute whether the expenses were incurred in connection with a covered proceeding. The Indemnification Agreement defines "Proceeding" as follows:

---

[75] D.I. 7 at Ans.

[76] D.I. 31.

[77] JX 5 § 9.

[78] *Id.* The Indemnification Agreement defines "Corporate Status" in relevant part as "the status of a person who is or was a director, officer, employee, agent or fiduciary of the Company." *Id.* § 2(b).

16

any threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, investigation, inquiry, administrative hearing or any other actual, threatened or completed proceeding, whether brought in the right of the Company or otherwise and whether of a civil, criminal, administrative, legislative, or investigative nature, including any appeal therefrom, in which [Hoffman] was, is or will be involved as a party, potential party, non-party witness or otherwise by reason of the fact that [Hoffman] is or was a director or officer of the Company, by reason of any action taken by him or of any action on his part while acting as director or officer of the Company, or by reason of the fact that he is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, limited liability company, partnership, joint venture, trust or other enterprise, in each case whether or not serving in such capacity at the time any liability or expense is incurred for which indemnification, reimbursement, or advancement of expenses can be provided under this Agreement; except one initiated by [Hoffman] to enforce his rights under this Agreement.[79]

---

[79] *Id.* § 2(f). At trial, the parties agreed Section 8(c) of the Indemnification Agreement exempts from advancement "any Proceeding (or any part of any Proceeding) initiated by [Hoffman], including any Proceeding (or any part of any Proceeding) initiated by [Hoffman] against the Company or its directors, officers, employees or other indemnitees, unless" authorized by the Board. D.I. 23 at Pretrial Br. 25–26; D.I. 38 at 53–55 (Hoffman arguing that Section 8(c) does not apply because the proceeding at issue was initiated by the Company and not by Hoffman); *id.* at 55 ("THE COURT: But I don't see, in Section 8(c), any qualifier for whether something was reasonably necessary in defense or compulsory or anything like that. It says that any part of a proceeding initiated by indemnitee. [HOFFMAN'S COUNSEL]: Yeah. I understand the Court's question. Our view is that once the proceeding is initiated by the company, Mr. Hoffman has the power to take whatever steps are necessary, has the ability to be indemnified for whatever steps are necessary to respond to that -- to that proceeding."); *id.* at 61 ("[FIRST WAVE'S COUNSEL]: "8(c) excludes proceedings initiated by the indemnitee or any part of a proceeding that is initiated by the indemnitee against the company. That, I believe, is applicable here as well."); *id.* at 102 ("THE COURT: So is your position that -- I read Section 8(c) to effectively carve out shots by Mr. Hoffman, not to also carve out successive or even responsive shots by the company. [FIRST WAVE'S COUNSEL]: Right.").

17

Hoffman bears the burden of demonstrating that the purported proceeding at issue is covered by the Indemnification Agreement.[80]  Once Hoffman establishes the existence of a covered proceeding, the burden is on the Company to show that advancement is not required.[81]

Hoffman's Complaint seeks advancement in connection with a proceeding in the form of an actual investigation or inquiry.[82]  The Complaint presses the theory that "[t]o determine that Mr. Hoffman disclosed confidential company information

---

The Indemnification Agreement's language is less than clear on whether the exception would apply to Hoffman's claims in an action he initiated.  JX 5 § 9 ("This Section 9 shall not apply *to any claim made by [Hoffman]* for which indemnity is excluded pursuant to Section 8 . . . ." (emphasis added)); *id.* §§ 8, 8(c) ("[T]he Company shall not be obligated under this Agreement to make any indemnity in connection *with any claim made against [Hoffman]*: . . . in connection with any Proceeding (or any part of any Proceeding) *initiated by [Hoffman]*, including any Proceeding (or any part of any Proceeding) initiated by [Hoffman] against the Company or its directors, officers, employees or other indemnitees . . . ." (emphasis added)).  I proceed based on the parties' undisputed interpretation, under which any claim for advancement must be tethered to a proceeding initiated by the Company.  To the extent Hoffman argued to the contrary, he abandoned that position at trial.  D.I. 38 at 55; *see* D.I. 22 at 19–20 [hereinafter "Pl. PTB"].

[80] *See Aleynikov, Sergey v. Goldman Sachs Group, Inc.*, C.A. No. 10636-VCL, at D.I. 97 ¶¶ 1, 10 (Del. Ch. July 13, 2016) (ORDER) ("The evidence, such as it was, stands in equipoise.  Because [the plaintiff] had the burden of proof, he failed to prove that someone who held the bare title of 'Vice President,' . . . qualified as an officer for purposes of advancement under the Bylaws."), *aff'd*, C.A. No. 366, 2016 (Del. Jan. 20, 2017); *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 463–64 (Del. Ch. 2008) ("The interpretation of the term 'nominal officer' is a question of law, while the question of whether [the plaintiff] meets that definition is one of fact.  [The plaintiff], who seeks to enforce rights under the Bylaws, bears the burden of persuasion in demonstrating that the Bylaws entitle him to mandatory advancement." (footnote omitted)).

[81] *Kerbs v. Bioness Inc.*, 2022 WL 3347993, at *3 (Del. Ch. Aug. 15, 2022).

[82] *See, e.g.*, Compl. ¶¶ 28–35.

and breached his fiduciary duty, the Board necessarily must have conducted an 'investigation' and/or 'inquiry' into Mr. Hoffman's actions, thus falling within the definition of 'Proceeding' in the parties' Indemnification Agreement."[83] Hoffman argues that the record proves the existence of an actual investigation, based almost entirely on the inference that an investigation or inquiry must have occurred because the Board concluded he engaged in misconduct and breached his fiduciary duties. The Company argues that it never undertook an investigation or inquiry into Hoffman's conduct.

In pretrial briefing, Hoffman's position evolved to include an alternative argument that the Company threatened a lawsuit or regulatory action, which also triggers his advancement rights. He maintains that he may recover under a claim for a threatened proceeding because that theory was adequately pled in the Complaint. The Company argues Hoffman's Complaint pleads a claim based only on an actual investigation or inquiry, not a threatened proceeding.

I find that the Company did not investigate or otherwise conduct an inquiry into Hoffman. I then conclude that the Complaint did not put the Company on fair notice of a claim based on a threatened proceeding. And a review of the record shows that Hoffman did not otherwise put First Wave on notice that he was litigating

---

[83] *Id.* ¶ 33.

a claim based on a threatened proceeding until he filed his pretrial brief. Even then, the basis for this claim was not clear, and the argument was not fully developed until Hoffman argued at trial. This lack of notice, coupled with Hoffman's failure to amend his Complaint to include such a claim, precludes him from recovering on that basis. Hoffman is therefore not entitled to advancement or fees on fees in connection with this litigation.[84]

### A. The Company Did Not Undertake An Investigation Or Inquiry Into Hoffman's Conduct.

Hoffman argues that because the Board concluded he "breached his fiduciary duty, violated federal law and company policy, and materially harmed the company," it "must have conducted some form of investigation, inquiry, or at minimum some other proceeding of an 'investigative nature.'"[85] Because he has failed to proffer any evidence that such an investigation or inquiry occurred, he has not demonstrated that any proceeding triggered his advancement rights.

The record offers no evidence of an investigation or inquiry between the July 29 call and the October 13 email giving Hoffman notice of the proposal to form the Committee. Hoffman's testimony reveals that he is aware of no facts supporting his position that the Board investigated him or otherwise subjected him to an inquiry.

---

[84] *See Levy v. HLI Operating Co.*, 924 A.2d 210, 225–27 (Del. Ch. 2007).
[85] Pl. PTB 14.

He testified that the Company did not interview him, that he did not produce documents in connection with an investigation or inquiry, and that he is aware of no actions that the Board or Company took to carry out an investigation or inquiry. [86] He has no firsthand knowledge of any actions taken in response to the concern that he may have engaged in misconduct.[87]

There are likewise no documents evincing an investigation or inquiry. On the contrary, many of Hoffman's counsel's letters support the view that neither proceeding took place. In an October 19 letter, Hoffman's counsel asserted that the issue of disclosing confidential information "was never previously raised with Mr. Hoffman," and that Hoffman "was never even made aware of the allegation, never asked for any information and never given an opportunity to respond."[88] In an October 25 letter, Hoffman's counsel criticized the Board for not following any proper procedures for investigating Hoffman, including informing Hoffman of the pending investigation and obtaining director consent to initiate the investigation outside of a Board meeting.[89] His counsel also reiterated that Hoffman was never interviewed, and instead, "the other Board members accepted an uncorroborated statement from Mr. Sapirstein that Dr. Glick was aware of amounts raised under the

---

[86] Hoffman 84–88, 93, 98–105, 107.

[87] *See, e.g.*, *id.* at 88.

[88] JX 17.0001.

[89] JX 22.0001–0002.

21

ATM."[90]  His counsel also asserted that the Board "assumed, without any evidence, that Mr. Hoffman was the source of that information."[91]  Hoffman's testimony and his counsel's letters, coupled with the lack of any documents reflecting any investigation, tends to show that no investigation or inquiry occurred.

The only other evidence is Sapirstein's testimony.  Sapirstein's testimony demonstrates that when Glick made his July 29 demand, Sapirstein presumed that Hoffman disclosed the existence of the ATM offering.[92]  Immediately after learning the information was leaked to Glick, he discussed the matter with two members of the Company's management team.[93]  He then spoke with the Company's counsel, who advised him to "just let it rest."[94]  Sapirstein heeded this advice, and took no action to determine who informed Glick of the offering beyond asking Hoffman on an informal Board call.[95]

In responding to the leak, the Company directors started from the conclusion that Hoffman leaked the offering to Glick; their actions were corrective actions from that conclusion, not investigative actions undertaken in reaching that conclusion.  At

---

[90] JX 22.0002.

[91] *Id.*

[92] *See* Sapirstein 42–45, 153, 180.

[93] *Id.* at 39–43.

[94] *Id.* at 43.

[95] *Id.* at 43–49, 92–93.

some point, Sapirstein raised the possibility that Hoffman disclosed that information on an informal Board call.[96] Two to three different Board members called Sapirstein at different times expressing concern about discussing Fortis matters with Hoffman present and asking Sapirstein find a way to shield those conversations from Hoffman.[97] Sapirstein reached out to Borkowski, believing he could help develop a solution.[98] Together, they came up with the idea to form the Committee so that certain financial matters could be discussed without fear that Hoffman would disclose confidential information to Glick.[99] Sapirstein discussed this plan with one other director before formally proposing the Committee's formation to the Board.[100] These actions were remedial, not investigatory.

The Company's response falls short of an "investigation" or "inquiry" sufficient to trigger Hoffman's advancement rights.[101] Hoffman has failed to meet

---

[96] *Id.* at 44–49, 92–93.

[97] *Id.* at 64–65.

[98] *Id.* at 33.

[99] *Id.* at 33–34, 107–08.

[100] *Id.* at 89.

[101] In his pretrial brief, Hoffman appears to argue that the consideration of one or more facts and then reaching a conclusion based on those facts constitutes an investigation or inquiry. Pl. PTB 15 ("Mr. Sapirstein's insistence that determining and evaluating the relevant facts with advice from counsel in order to determine a company director violated federal law and company policy was not an investigation or inquiry strains credulity."). At trial, he explained this in a slightly different way: "The investigation is simply in the syllogism that we line up fact A and fact B, and we believe that we've established those

his burden to prove that the Company conducted an investigation or inquiry that qualifies as a proceeding warranting advancement under the Indemnification Agreement.

## B. Hoffman May Not Recover In Connection With A Threatened Proceeding.

The Indemnification Agreement's advancement provision covers not only actual proceedings, but also threatened ones. Hoffman's pretrial brief argues the existence of threatened "future litigation or regulatory action," and he appears to rely on the same communications with Company counsel that supported his position that there was an actual investigation or inquiry.[102] At trial, First Wave countered that the Complaint did not plead a claim for advancement based on future litigation or regulatory action such that Hoffman may not recover on that basis.[103] With the

---

facts and we draw factual and legal conclusions." D.I. 38 at 36. Hoffman's counsel did not cite or compare this theory to any definition of "investigation" or "inquiry."

Hoffman's syllogism is inconsistent with the plain language definitions of "investigation" and "inquiry." *Merriam-Webster Dictionary* defines "investigate" as "to make a systematic examination" and especially "to conduct an official inquiry." *Investigate*, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/ investigation (last visited Sept. 26, 2023); *see also Investigation*, *Black's Law Dictionary* (11th ed. 2019) ("The activity of trying to find out the truth about something, such as a crime, accident, or historical issue."). "Inquiry," in turn, is defined as "a request for information"; "a systematic investigation often of a matter of public interest"; and "examination into facts or principles." *Inquiry*, Merriam-Webster Dictionary, https://www.merriam-webster.com/ dictionary/inquiry (last visited Sept. 26, 2023). These definitions call for more positive action, pomp, and procedure than one individual's immediate deductive conclusion based on known facts.

[102] Pl. PTB 16–17.

[103] D.I. 38 at 120.

Court's leave, Hoffman submitted a supplemental letter asserting that his Complaint pled a claim based on a threatened proceeding.[104] First Wave submitted a letter in response, maintaining its position that the Complaint did not adequately plead a claim based on a threatened proceeding.[105] I agree with First Wave.

### 1. Hoffman's Complaint Did Not Plead A Theory Based On A Threatened Proceeding.

Generally, a plaintiff may recover following trial for claims adequately pled in her complaint.[106] That complaint must contain a short, plain statement of facts sufficient to give notice of the claims the plaintiff intends to litigate.[107] A complaint

---

[104] D.I. 36.

[105] D.I. 37.

[106] *See HOMF II Inv. Corp. v. Altenberg*, 2020 WL 2529806, at \*35–41 (Del. Ch. May 19, 2020) (analyzing whether a claim was pled in the complaint before determining whether the defendant was on notice and if an amendment under Rule 15(b) was proper), *aff'd*, 263 A.3d 1013 (Del. 2021); *In re Mindbody, Inc., S'holder Litig.*, 2023 WL 2518149, at \*43 (Del. Ch. Mar. 15, 2023) (reasoning the plaintiffs could not advance an aiding and abetting claim after trial where the complaint did not adequately plead the claim and where amendment under Rule 15(b) was not warranted).

[107] Ct. Ch. R. 8(a); *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1220 (Del. 1999) ("All that is required is that the complaint give 'fair notice' of [the claims at issue]." (quoting *Michelson v. Duncan*, 407 A.2d 211, 217 (Del. 1979)); *In re McDonald's Corp. S'holder Deriv. Litig.*, 289 A.3d 343, 376 (Del. Ch. 2023) ("The real question, therefore, is whether the complaint contained a short, plain statement of facts sufficient to support a claim against Fairhurst for breach of the duty of oversight."); *Altenberg*, 2020 WL 2529806, at \*37 ("[T]he question is whether the amended complaint contained a short, plain statement of facts sufficient to put [the defendant] on notice that the plaintiffs were litigating a claim for fraudulent inducement, along with allegations sufficient to make it reasonably conceivable that the plaintiffs could be entitled to recover."); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) ("When considering a defendant's motion to dismiss, a trial court should accept all well-pleaded factual allegations in the Complaint as

that gives fair notice "shifts to the defendant the burden to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses."[108] Court of Chancery Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice."[109]

Hoffman's Complaint seeks advancement specifically, and exclusively, for a covered proceeding in the form of an actual investigation or inquiry. It focuses on the inference that the Board could not have reached the conclusion that Hoffman breached his duties without an investigation. For example, the penultimate paragraph of his "Nature of the Action" section reads:

> Mr. Hoffman seeks reimbursement for his legal expenses, including attorneys' fees, which have been incurred in connection with First Wave's inquiry or investigation and to oppose actions taken by First Wave as a result of that inquiry or investigation, including but not limited to his efforts to rectify his unlawful exclusion from the Board.[110]

And in discussing the Company's October 20 Letter, the Complaint explains: "The letter thus purports to convey conclusions of an investigation or an inquiry conducted

---

true, accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim, draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof.").

[108] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003) (internal quotation marks omitted) (quoting *Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952)).

[109] Ct. Ch. R. 8(f).

[110] Compl. ¶ 5.

by First Wave and its counsel involving the alleged actions of Mr. Hoffman."[111] The Complaint similarly describes Hoffman's advancement demand as seeking "legal fees in connection with the inquiry and investigation."[112] The Complaint attaches the advancement demand, which asserts a right to advancement based only on an actual investigation or inquiry.[113] The final paragraph preceding the heading "Count I" concludes, "Given that the exclusion of Mr. Hoffman from the Board was based on specific factual allegations, the company must have conducted an investigation or inquiry on this issue, albeit a seriously flawed one."[114]

And though not dispositive, the Complaint includes only two titled counts, neither of which concerns a threatened proceeding: Count I, titled "Advancement In Connection With The Inquiry or Investigation," and Count II, titled "Claim for an Award of Expenses, Including Attorneys' Fees, Incurred in Connection with Prosecuting this Verified Complaint."[115]

Attempting to broaden his allegations to encompass threatened proceedings, Hoffman points out that the Complaint cites documents that he now argues include

---

[111] *Id.* ¶ 21.

[112] *Id.* ¶ 23.

[113] *Id.* (citing JX23).

[114] *Id.* ¶ 27.

[115] *Id.* at 10, 12; *Altenberg*, 2020 WL 2529806, at *36 (in assessing whether a complaint pled a claim for fraudulent inducement, explaining that the complaint did not include a claim titled "fraudulent inducement," but noting that the "omission . . . is not dispositive").

threats of future litigation or regulatory action. But the Complaint's singular focus on the existence of an actual investigation or inquiry discourages the conclusion that the same documents could support a different, and unidentified, type of proceeding. He also points out that the Complaint quotes the full definition of "Proceeding," and therefore the portion of the definition that references threatened proceedings. But these references are incidental, presented in the context of a claim based on actual investigation or inquiry, and do not put the Company on notice of Hoffman's intent to litigate a claim based on a threatened proceeding. And one such replication of the full definition of "Proceeding" emphasizes the words "investigation" and "inquiry" in bold, relegating "threatened" to ordinary typeface, which further reflects the Complaint's limited focus.[116]

At bottom, Hoffman's argument amounts to a suggestion that a sufficiently superficial reading of the Complaint would encompass the possibility that he might intend to seek advancement based on additional types of proceedings. Even with the benefit of hindsight, it is difficult to read the Complaint as pleading a claim based on a threatened proceeding—its clear and singular focus is Hoffman's request for advancement based on an actual investigation or inquiry into his conduct. This focus leads a reasonable reader to believe that he is pursuing this summary proceeding on

---

[116] Compl. ¶ 14.

that limited basis, to the exclusion of any alternative ground.  One would have to ignore much of the Complaint to read it as putting First Wave on fair notice that Hoffman believed he was entitled to recover based on the existence of a threatened proceeding.  I decline to do so.[117]

### 2. Hoffman Did Not Otherwise Give Fair Notice Of His Theory Based On A Threatened Proceeding.

"The failure to plead a particular legal theory is not inherently fatal."[118]  Our law favors resolving claims on the merits as opposed to holding a plaintiff to the theories set forth in her complaint.[119]  This Court has reasoned that a plaintiff may recover based on claims not pled in the operative complaint where the plaintiff gives

---

[117] *See* Ct. Ch. R. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

[118] *In re Cellular Tel. P'ship Litig.*, 2021 WL 4438046, at *61 (Del. Ch. Sept. 28, 2021).

[119] *In re Mindbody, Inc., S'holder Litig.*, 2021 WL 5834263, at *1 n.8 (Del. Ch. Dec. 9, 2021) ("There is a strong public policy that dictates that courts resolve cases on their merits."); *Shah v. Coupe*, 2014 WL 5712823, at *2 (Del. Super. Nov. 3, 2014) ("[T]he preference of Delaware courts is to decide cases on their merits."); s*ee also* Daniel L. Herrmann, *The New Rules of Procedure in Delaware*, 18 F.R.D. 327, 338 (1955) (explaining the adoption of certain court rules, including Rule 15(b), was in furtherance of a "de-emphasis upon pleadings and the re-emphasis upon ascertainment of truth"); 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1219 (4th ed.) [hereinafter "*Wright & Miller*"] ("[I]t is clear that the federal rules—and the decisions construing them—evince a belief that when a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage . . . .").

fair notice of the intent to litigate those claims prior to trial through discovery, motion practice, or otherwise.[120]

As stated, the Complaint did not put First Wave on notice of a claim based on a threatened proceeding. During discovery, Hoffman was asked in an interrogatory to "[i]dentify all facts and circumstances evidencing that Hoffman was a party to a Proceeding conducted by the Company."[121] After stating various objections, Hoffman responded:

> [T]he . . . Committee was created to exclude him from the Board based on the Board's investigation and ultimate finding that he had breached his fiduciary duty and disclosed confidential information to the detriment of the Company. Mr. Hoffman also states that the following documents will evidence that Mr. Hoffman was a party to a proceeding conducted by the Company: minutes of the First Wave Board of Directors meeting and Special Committee meeting on or around October 20, 2022; and [Company counsel's] letters to [Hoffman's counsel].[122]

The first sentence identifies only an investigation and does not mention a threatened proceeding. The second identifies the October 20 Letter, though there is no

---

[120] *See Altenberg*, 2020 WL 2529806, at *37 ("Even still, the failure of the amended complaint to address Altenberg's solicitation of the plaintiffs' investment would not have foreclosed the plaintiffs from conducting discovery into these issues or seeking to prove a fraudulent inducement clam at trial, if the plaintiffs had given Altenberg fair notice that they intended to do so."); *Cellular Tel. P'ship*, 2021 WL 4438046, at *61 (evaluating whether "the plaintiffs gave the defendant adequate notice that they were litigating a particular theory such that the defendant had 'a fair opportunity to respond.'" (quoting *Bäcker v. Palisades Growth Cap. II, L.P.*, 246 A.3d 81, 103 (Del. 2021)).

[121] JX 37.0009.

[122] JX 37.0010.

suggestion that Hoffman was relying on it as evidence of a threatened proceeding, as the document is central to his theory that the Company investigated him. I interpret this response as stating Hoffman's claim is based solely on the existence of an investigation or inquiry, to the exclusion of other theories.

As is customary in advancement actions, the parties submitted simultaneous pretrial briefs, and did not engage in post-trial briefing. First Wave's brief addressed whether the Board threatened an investigation or inquiry, but did not meaningfully engage with the question of whether the Company threatened litigation or regulatory action. Hoffman's brief raises the possibility of a threatened proceeding in a one-paragraph argument, which, depending on the light, either was intended to further support the presence of an actual investigation, or was raised in the alternative.[123] As record support, it cites only five lines of Hoffman's deposition transcript, in which he testifies that he deemed a sentence in the October 17 email to be "a threatening statement."[124] A review of his deposition transcript reveals he gave two other similar answers, both in response to questions from his own counsel.[125]

---

[123] Pl. PTB 16–17; *see Altenberg*, 2020 WL 2529806, at \*38 (noting the plaintiffs' pretrial brief addressed fraud generally in two paragraphs, which supported the conclusion that it not provide fair notice of a claim for fraudulent inducement).

[124] Pl. PTB 17 (citing Hoffman 140–41).

[125] Hoffman 145, 148–49. Hoffman's pretrial brief does not clearly explain the basis for a claim based on a threatened proceeding, and Hoffman's subjective feeling that emails were "threatening" is not dispositive of whether the Company threatened a lawsuit or investigation.

31

In the pretrial stipulation, Hoffman likewise did not identify his threatened proceeding theory as part of the "issues of fact and law to be litigated."[126] Rather, he stated "the issue of law to be litigated is whether the Company is required to advance Mr. Hoffman's fees and expenses for this litigation and any other litigation arising out of the inquiry and/or investigation conducted by the Company into Mr. Hoffman's behavior while a director of the Company," and referred generally to his brief.[127] The parties also stipulated that no pretrial conference was necessary, forgoing another opportunity to address this issue.[128]

Hoffman developed his threatened proceeding theory at trial, explaining that the October 20 Letter included a litigation threat.[129] At trial, his counsel explained that the statements contained therein would be understood as a threat "especially [by] someone like Mr. Hoffman, who holds seven different securities licenses and has made a 35-year distinguished career in the securities industry."[130] That was the first time Hoffman meaningfully explained any theory that the Company had threatened a proceeding and thereby triggered his advancement rights. When I asked First Wave whether the October 20 Letter could be read as a litigation threat, it

---

[126] D.I. 30 § II.A; s*ee Altenberg*, 2020 WL 2529806, at *38–39.

[127] D.I. 30 § II.A.

[128] *Id.* § VIII.

[129] D.I. 38 at 45–48.

[130] *Id.* at 46–47.

objected to Hoffman's argument being considered on the grounds that his Complaint focuses exclusively on an alleged actual investigation or inquiry.[131]

Because the Complaint did not put First Wave on notice of the threatened proceeding theory, and because this theory was not disclosed until the parties filed their simultaneous pretrial briefs and was not elucidated or supported until trial, I conclude Hoffman did not put First Wave on fair notice of his intent to litigate a claim based on a threatened proceeding.

### 3. Hoffman Did Not Move To Amend.

Court of Chancery Rule 15(b) allows for pleadings to be amended during or after trial, even where a plaintiff has neither adequately pled her theory nor otherwise put the defendant on notice.[132] Rule 15(b) is intended "to encourage the disposition

---

[131] *Id.* at 120.

[132] Ct. Ch. R. 15(b). Rule 15(b) can be used to add new claims or theories to a complaint. *Mindbody*, 2023 WL 2518149, at *41 (considering under Rule 15(b) whether a complaint could be amended to include a new claim for aiding and abetting); *Altenberg*, 2020 WL 2529806, at *36, *40–41 (considering whether a complaint should be amended to include a claim for fraudulent inducement under Rule 15(b)); *Those Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs., Inc.* (*Lloyd's*), 2008 WL 2133417, at *9–11 (Del. Ch. May 21, 2008) (considering under Rule 15(b) whether a complaint should be amended to include a statutory claim), *aff'd sub nom. Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs., Inc.*, 962 A.2d 916 (Del. 2008); *Miller v. Hob Tea Room*, 75 A.2d 577 (Del. Ch. 1950) (considering under Rule 15(b) whether a plaintiff "should be permitted to amend to reinstate a theory consciously abandoned"); *see also* 6A *Wright & Miller* § 1493 ("Rule 15(b)(2) has been used in a wide range of circumstances, and its scope of application is as wide as that of Rule 15(a). . . . Amendments have been allowed to . . . add unpleaded claims." (footnote omitted)).

of litigation on its merits."[133]  In determining whether to allow an amendment under Rule 15, the Court considers the amendment's prejudice to the opposing party.[134] Whether to allow a Rule 15(b) amendment is within the Court's discretion.[135]  A motion to amend is required where an issue is tried without the opposing party's express or implied consent.[136]

The Court addressed a similar situation in *HOMF II Investment Corp. v. Altenberg*.[137]  There, trial testimony supported a claim for fraudulent inducement, but the defendant argued the plaintiffs could not recover on that claim because it was not pled in the complaint.[138]  The plaintiffs responded only by arguing that the complaint did plead the claim.[139]  The Court concluded that the complaint did not plead a claim for fraudulent inducement and that the defendant was not otherwise on

---

[133] *Vichi v. Koninklijke Philips Elecs.*, *N.V.*, 85 A.3d 725, 759 (Del. Ch. 2014) (internal quotation marks omitted) (quoting *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 72 (Del. 1993)); *see generally Altenberg*, 2020 WL 2529806, at *40–41.

[134] *Altenberg*, 2020 WL 2529806, at *41 ("Delaware decisions likewise state that the primary consideration is whether the opposing party was prejudiced." (citing *Lloyd's*, 2008 WL 2133417, at *10)).

[135] *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 72 (Del. 1993) ("A decision to permit or deny an amendment is left to the discretion of the trial judge.").

[136] *See Altenberg*, 2020 WL 2529806, at *41; 3 James Moore et al., *Moore's Federal Practice* § 15.18  (3d ed.) ("Even though a court should permit these types of amendments 'freely,' the court may not do so sua sponte.").

[137] *Altenberg*, 2020 WL 2529806, at *40–41.

[138] *Id.* at *27, *35.

[139] *Id.* at *35.

notice of the plaintiffs' intent to litigate the claim prior to trial.[140] It then explained

that under those circumstances, "the plaintiffs should have moved under Rule 15(b)

to amend the pleadings to conform to the evidence presented at trial."[141] The Court

reasoned that had they done so, whether the amendment would have been allowed

"would have presented a close question," in part because the defendants would likely

not be prejudiced.[142] Nevertheless, because the plaintiffs "did not make a motion

under Rule 15(b)," the Court reasoned "[i]t remains the case that a claim for

fraudulent inducement has never properly been introduced into the case."[143] The

plaintiffs appealed, arguing among other things that the Court erred in "barring the

fraudulent inducement claim on technical grounds."[144] Our Supreme Court

affirmed.[145]

Hoffman has not moved under Rule 15(b) to amend the Complaint. Rather,

just as the plaintiffs in *Altenberg*, he steadfastly maintained that the Complaint pled

a claim based on a threatened proceeding. Because he has failed to seek amendment

---

[140] *Id.* at \*35–40.

[141] *Id.* at \*40.

[142] *Id.* at \*41.

[143] *Id.*

[144] *HOMF II Inv. Corp. v. Altenberg*, C.A. No. 14, 2021, at D.I. 11 at Op. Br. 27–28 (Del. Mar. 2, 2021).

[145] *HOMF II Inv. Corp. v. Altenberg*, 263 A.3d 1013 (Del. 2021) (TABLE).

35

under Rule 15(b) or otherwise, he cannot prevail on the threatened proceeding theory.

## III.   CONCLUSION

For the forgoing reasons, judgment is entered in First Wave's favor on Counts I and II of the Complaint.  Counsel shall submit a proposed final order.